UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH J. LAMPHIER, III,

                                    Plaintiff,

v.                                                          6:15-CV-0225
                                                             (GTS)
CAROLYN W. COLVIN
Acting Commissioner of Social Security,

                                    Defendant.
_____

APPEARANCES:                                OF COUNSEL:

IACONIS LAW OFFICE, PLLC                    CHRISTOPHER D. THORPE, ESQ.
  Counsel for Plaintiff
501 Genesee Street
Chittenango, NY 13037


U.S. SOCIAL SECURITY ADMIN.                 EMILY M. FISHMAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278


GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Joseph J. Lamphier, III

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on

the pleadings.  (Dkt. Nos. 15, 16.)  For the reasons set forth below, Plaintiff's motion for

judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is

granted.

# I.      RELEVANT BACKGROUND

## A.      Factual Background

Plaintiff was born on March 30, 1976.  Plaintiff has a tenth grade education, and has past work as a warehouse worker, a construction laborer, a scrap sorter, a pizza delivery person, and a cook helper.  Generally, Plaintiff's alleged disability consists of spontaneous pneumothorax,[1] depression, headaches, and impairments of the neck, left shoulder, arm, and hand.  Plaintiff's alleged disability onset date is August 14, 2010.

## B.      Procedural History

On May 18, 2011, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income.  Plaintiff's application was initially denied on September 9, 2011, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  On July 29, 2013, Plaintiff appeared in a video hearing before the ALJ, Edward I. Pitts.  (T. 49-97.)  On August 2, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 12-31.)  On December 24, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-4.)

## C.      The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 17-24.)  First, the ALJ found that Plaintiff met the insured status

---

[1]      Pneumothorax is a collapsed lung that occurs when air escapes from the lung.  A spontaneous collapsed lung occurs without any cause.  Common symptoms include sharp chest or shoulder pain, shortness of breath, and nasal flaring.  A larger pneumothorax causes more severe symptoms, including bluish color of the skin due to lack of oxygen, chest tightness, lightheadedness and near fainting, easy fatigue, and rapid heart rate.  U.S. National Library of Medicine, National Institute of Health, https://www.nlm.nih.gov/medlineplus/ency/article/000087.htm (last visited May 18, 2016).

requirements through December 31, 2013, and has not engaged in substantial gainful activity since August 14, 2010, the alleged onset date.  (T. 17.)  Second, the ALJ found that Plaintiff has the following severe impairments: residuals of pneumothorax, cervical spine degenerative disc disease, and depression.  (T. 17-18.)  The ALJ found that Plaintiff's following impairments are not severe: headaches, back pain, congenital left shoulder disorder, and various orthopedic issues including costochondritis.  (*Id.*)  Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1.  (T. 19-20.)  The ALJ considered Listings 1.04 and 12.04.  (*Id.*)  Fourth, the ALJ found that Plaintiff

> has the residual functional capacity ["RFC"] to lift and carry up to 20 pounds occasionally and ten pounds frequently, sit, stand, and walk without limitations; and push and pull up to 20 pounds for only 10-to-15 minutes.  He can only occasionally bend at the waist and he should not be required to engage in activities that require compression of the chest.  He cannot be required to run or perform strenuous activity for more than 10-to-15 minutes at one time.  He should avoid respiratory irritants.  He is generally capable of unskilled work, but he should have no more than frequent contact with supervisors, coworkers, or the general public.

(T. 20-23.)  Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work.  (T. 23.)  Sixth, and finally, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T. 23-24.)

### D.    The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff advances four argument in support of his motion for judgment on the pleadings.  First, Plaintiff argues that the ALJ committed reversible error by failing to find that Plaintiff's left shoulder impairment, emphysema, and removal of a portion of his lung were severe impairments.  (Dkt. No. 15, at 2-11 [Pl.'s Mem. of Law].)  Second, Plaintiff argues that

the ALJ committed reversible error by failing to follow the regulatory factors in weighing the opinions of Plaintiff's various treating practitioners and the consultative physicians. (*Id.* at 11-19.) More specifically, Plaintiff argues that (1) the ALJ should have afforded greater weight to the opinion of treating physician, Sunny Nelson, M.D., and improperly substituted his own opinion in assessing Dr. Nelson's opinion, (2) the ALJ improperly afforded great weight to the opinion of consultative examiner, Jennifer Hsu, M.D., because Dr. Hsu was not fully aware of Plaintiff's medical history of emphysema and left shoulder and arm complaints, (3) the ALJ erred in considering the opinion of treating pulmonologist, Pedro Del Pino, M.D., because Dr. Del Pino last treated Plaintiff in October 2008 and did not have Plaintiff's latest spirometry test results, and (4) the ALJ failed to afford significant weight to the opinion of treating source, Daria Yourick.[2] (*Id.*)

Third, Plaintiff argues that the ALJ failed to consider and implement the regulatory factors properly in assessing Plaintiff's credibility. (*Id.* at 19-23.) Fourth, and finally, Plaintiff argues that the ALJ committed reversible error by failing to develop the record adequately by not recontacting Dr. Nelson and Dr. Del Pino. (*Id.* at 23-27.) More specifically, Plaintiff argues that the ALJ should have recontacted (1) Dr. Nelson for clarification of inconsistencies between his opinion and other medical evidence of record, and (2) Dr. Del Pino for clarification of the word "strenuous" in his opinion that Plaintiff should not perform strenuous activity or heavy lifting. (*Id.*)

---

[2]     Plaintiff argues that the ALJ erred in affording limited weight to the opinion of "Daria York, FNP." Although Plaintiff does not provide a citation to the Decision or the record, it appears that he is referencing the ALJ's assessment of the opinion provided by "Daria Yourick, P.A." (T. 16-18.) For the purpose of the analysis below in Part III.iv. of this Decision and Order, the Court notes that opinions from nurse practitioners and physician assistants are both considered "other source" opinions under the regulations. 20 C.F.R. §§ 404.1513(a), (c)-(d), 416.913(a), (c)-(d).

Generally, Defendant advances three arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ properly weighed all of the opinion evidence and was not required to develop the record further. (Dkt. No. 16, at 5-17 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly considered Plaintiff's credibility. (*Id.* at 17-20.) Third, and finally, Defendant argues that the ALJ properly considered Plaintiff's shoulder and lung impairments. (*Id.* at 20-22.)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth

> inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

For the ease of analysis, Plaintiff's arguments are reorganized below.

### A. Whether the ALJ's Step Two Finding was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 20-22 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

According to Social Security Regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). The regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," with examples including the following: (1) physical functions such as walking, standing, lifting, pushing, pulling, carrying or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). Accordingly, the severity of an impairment is determined by the limitations imposed by the impairment, and not

merely by diagnosis of the impairment. *Ellis v. Comm'r,* 11-CV-1205, 2012 WL 5464632, at *4 (N.D.N.Y. Sept. 7, 2012) (citing *Coleman v. Shalala,* 895 F. Supp 50, 53 [S.D.N.Y. 1995]); *see also McConnell v. Astrue,* 03-CV-0521, 2008 WL 833968 (N.D.N.Y. Mar. 27, 2008).

"The second step requirement under the prescribed disability analysis is truly *de minimis*, and intended only to screen out the truly weakest of cases." *Davis v. Colvin*, 11-CV-0658, 2013 WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 [2d Cir. 1995]). When an ALJ finds that one or more of a plaintiff's impairments are severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the five-step analysis and did not deny the claim based on lack of a severe impairment alone. *Ellis,* 2012 WL 5464632, at *5; *Tyron v. Astrue,* 10-CV-0537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012); *Kemp v. Comm'r,* 10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011).

Moreover, when "an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010); *see also* 20 C.F.R. §§ 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [a plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

### i. Left Shoulder Impairment

Here, the ALJ considered Plaintiff's left shoulder impairment at step two and in the remainder of the sequential analysis. (T. 18-23.) At step two, the ALJ noted that Plaintiff has complained of numbness in his left arm and has shown a limited range of motion of the left arm due to discomfort. (T. 18.) Upon examination in August 2011, Dr. Hsu observed that Plaintiff had mild tenderness to palpation of his left shoulder, yet retained a full range of motion and

stability of the joint, and had no redness, heat, swelling, or effusion. (T. 949.) In May and June of 2011, Plaintiff reported to Dr. Follette that, despite numbness in his left hand when he raises his arm, his arm and neck pain was "okay" and he continued to "soldier through" his difficulties. (T. 21-22.) The ALJ noted that Plaintiff did not identify his left shoulder disorder as a disabling impairment at the hearing, and there is no evidence to support any functional restrictions based on this condition. (T. 18.) Nonetheless, the ALJ noted that Plaintiff complained of difficulty lifting with his left arm, and included lifting, carrying, pushing, and pulling limitations in the RFC determination. (T. 20-23.)

### ii.    Emphysema and Lung Surgery

The ALJ considered Plaintiff's respiratory impairments and lung surgery at step two and in the remainder of the sequential analysis. (T. 17-23.) At step two, the ALJ noted that a CT scan in April 2012 and a CT pulmonary angiography in January 2013 showed bilateral upper lobe pulmonary emphysema and atypical postoperative changes on the left. (T. 18.) While the ALJ did not specifically find that Plaintiff's emphysema and surgery to remove a portion of his lung were severe impairments, he nonetheless found that Plaintiff had a severe respiratory impairment at step two, specifically Plaintiff's residuals of pneumothorax. (T. 17-18.) Further, the ALJ included limitations in his RFC finding to account for Plaintiff's respiratory impairment, such as finding that Plaintiff could not engage in activities that require compression of the chest, could not run or perform strenuous activity for more than ten to 15 minutes at a time, and should avoid respiratory irritants. (T. 20-23.)

Moreover, because the ALJ found that Plaintiff's residuals of pneumothorax, cervical spine degenerative disc disease, and depression were severe at step two, the ALJ did not deny benefits based on lack of a severe impairment. (T. 17-18.) Finally, the ALJ properly considered

the effects of Plaintiff's combined impairments in the remainder of his analysis and included limitations in the RFC for Plaintiff's combined impairments. (T. 17-23.) The ALJ expressly stated that, in determining Plaintiff's RFC, he must "consider all of the claimant's impairments, including impairments that are not severe," and noted Plaintiff's complaints of difficulty lifting with his left arm and shortness of breath. (T. 16, 22.) Accordingly, even if the ALJ's failure to find additional impairments severe at step two of the sequential analysis was error, it would be harmless. *Ellis*, 2012 WL 5464632, at *5; *Tyron,* 2012 WL 398952, at *3.

Therefore, the ALJ's step two determination was supported by substantial evidence, and remand is not necessary on this basis.

### B. Whether the ALJ's Assessment of the Medical Opinion Evidence was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 5-17 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Under the "treating physician's rule," controlling weight is afforded to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, or when assessing a medical opinion from another source, the ALJ should consider the following factors

to determine the proper weight to afford the opinion: (1) the source's examination relationship and treatment relationship, including the length, nature, and extent of the treatment relationship, if applicable, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case record. 20 C.F.R. § 404.1527(c), 416.927(c)(2); *Halloran*, 362 F.3d at 32 (listing regulatory factors).

### i.      Treating Primary Care Physician, Sunny Nelson, M.D.

On November 15, 2012, Dr. Nelson opined that Plaintiff could sit for 45 minutes at a time and for two hours total, stand/walk for 15 minutes at a time and for less than two hours total, and occasionally lift less than ten pounds in an eight-hour workday. (T. 22.) Dr. Nelson opined that Plaintiff could never climb, balance, crawl, or twist during an eight-hour workday, would likely require unscheduled work breaks four to five times per day, and would likely be absent from work about once per month due to his symptoms and treatments. (*Id.*) The ALJ afforded limited weight to Dr. Nelson's opinion, reasoning that the opinion is not supported by Dr. Nelson's own clinical findings and treatment records (including Dr. Nelson's consistent suggestions that Plaintiff exercise as much as possible without limitation), the objective evidence of record (including pulmonary reports interpreted by medical professionals), and the opinions of consultative examiner, Dr. Hsu, and treating pulmonologist, Dr. Del Pino (discussed below in Part III.B.ii. and Part III.B.iii. of this Decision and Order. (*Id.*)

Plaintiff argues that the ALJ substituted his own lay opinion concerning the findings in the medical reports in assessing the opinion of Dr. Nelson. (Dkt. No. 15, at 11, 14-15 [Pl.'s Mem. of Law].) It is well established that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999)

(quoting *McBrayer v. Sec'y of Health & Human Servs.,* 712 F.2d 795, 799 [2d Cir. 1983]); *see also Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998). While an ALJ "is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician." *McBrayer,* 712 F.3d at 779.

However, here, the ALJ indicated that Dr. Nelson's restrictive opinion was inconsistent with the opinions of Dr. Hsu and Dr. Del Pino. (*Id.*) The ALJ noted that Dr. Hsu opined that Plaintiff had no limitation in sitting, and standing, and mild limitation in prolonged strenuous activity such as climbing, or pushing or pulling heavy loads. (T. 22.) Additionally, the ALJ noted that Dr. Del Pino opined that Plaintiff could not perform strenuous activities or heavy lifting, but did not have environmental work limitations. (*Id.*) Accordingly, the ALJ did not impermissibly set his own expertise against that of Dr. Nelson, but relied on the "properly submitted medical opinions" from Dr. Hsu and Dr. Del Pino. *McBrayer,* 712 F.3d at 779.

Moreover, the ALJ properly applied the regulations in evaluating Dr. Nelson's opinion. As discussed above, the ALJ considered Dr. Nelson's professional credentials, treating relationship with Plaintiff, treatment notes, and cited inconsistencies between the opinion and other substantial evidence of record, including her own treatment notes and the opinions of Dr. Hsu and Dr. Del Pino. (T. 17-23.) Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review explicitly each and every factor of the regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

Accordingly, the ALJ's assessment of Dr. Nelson's opinion was supported by substantial evidence.

### ii.    Consultative Examiner, Jennifer Hsu, M.D.

On August 2, 2011, Dr. Hsu diagnosed Plaintiff with status post left partial pneumonectomy and headaches.  (T. 495.)  Dr. Hsu opined that Plaintiff had no limitations in sitting and standing, and had mild limitations in prolonged strenuous activity such as climbing, or pushing or pulling heavy loads secondary to his reduced respiratory function.  (T. 22.)

Upon examination, Dr. Hsu observed that Plaintiff appeared to be in no acute distress, had normal gait and normal stance, and could walk on his heels and toes without difficulty.  (T. 21, 493.)  Dr. Hsu observed that Plaintiff could perform a full squat, needed no help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty.  (T. 21, 493.)  Dr. Hsu further observed that Plaintiff's chest and lungs were clear to auscultation with normal percussion and diaphragmatic motion, and no significant chest wall abnormality.  (*Id.*)  Finally, Dr. Hsu observed that Plaintiff had full motion of the cervical spine and full strength and normal reflexes in the upper and lower extremities.  (*Id.*)

The ALJ afforded great weight to Dr. Hsu's opinion, reasoning that it was rendered after a thorough examination and best reflects the medical evidence from 2010 to the present time.  (T. 22.)  Plaintiff argues that the ALJ improperly afforded great weight to Dr. Hsu's opinion because Dr. Hsu was not fully aware of Plaintiff's medical history of emphysema and his history of left shoulder and arm complaints.  (Dkt. No. 15, at 18-19 [Def.'s Mem. of Law].)  However, Dr. Hsu's medical report explicitly notes Plaintiff's history of respiratory problems, including repeated pneumothorax that required surgical intervention, and Dr. Hsu included limitations in her opinion to account for Plaintiff's reduced respiratory function.  (T. 492, 495.)  Additionally,

Dr. Hsu observed that Plaintiff had mild tenderness to palpation of his left shoulder, yet retained full range of motion and stability of the joint, and had no redness, heat, swelling, or effusion.  (T. 949.)

An ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability.  20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *see also Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."); *Cobb v. Comm'r*, 2014 WL 4437566, at *6 (N.D.N.Y. Sept. 9, 2014).

Accordingly, the ALJ's assessment of Dr. Hsu's opinion was supported by substantial evidence.

### iii.     Treating Pulmonologist, Pedro Del Pino, M.D.

On June 17, 2013, Dr. Del Pino opined that Plaintiff could not perform strenuous activities or heavy lifting due to his lung condition, that he is subject to spontaneous pneumothorax which can be life threatening and requires prompt medical attention, but there are no environments in which Plaintiff could not work.  (T. 699.)  The ALJ noted Dr. Del Pino's specialty in pulmonology and afforded significant weight to his opinion, reasoning that it is generally consistent with the record as a whole and is from a treating source who is familiar with Plaintiff's progress.  (T. 22.)  Plaintiff argues that the ALJ erred in considering Dr. Del Pino's opinion as a medical source statement because he last treated Plaintiff in October 2008, two years before his alleged onset date, and did not have Plaintiff's latest spirometry test results from July 2010 and February 2011.  (Dkt. No. 15, at 15-16 [Pl.'s Mem. of Law].)

First, "the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. §§ 404.1545[a][3]-[4], 416.945[a][3]-[4]).  The ALJ must consider all of the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms.  20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e).  Therefore, the ALJ did not err in considering Dr. Del Pino's opinion.

Second, in assessing the medical opinion evidence, the ALJ recognized that other medical sources examined Plaintiff more recently than Dr. Del Pino.  For example, the ALJ afforded great weight to Dr. Hsu's opinion, reasoning that it was rendered after a thorough examination and best reflects the medical evidence from 2010 to the present time.  (T. 22.)  Further, the ALJ considered Plaintiff's complete medical record, which included the latest spirometry test results,[3] and determined that Dr. Del Pino's opinion was generally consistent with the record as a whole.  (T. 22.)

Accordingly, the ALJ's assessment of Dr. Del Pino's opinion was supported by substantial evidence.

### iv. Treating Physician Assistant, Daria Yourick, P.A.

On July 3, 2012, Ms. Yourick completed an assessment of Plaintiff's physical and mental functional limitations based on his "chronic pain."  (T. 552-53.)  Regarding Plaintiff's physical

---

[3]     Plaintiff's July 2010 pulmonary function test indicated "normal spirometry," and reviewing pulmonologist, Dr. Wassel, indicated that Plaintiff's February 2011 test findings "do not suggest the presence of either obstructive or restrictive defect.  Diffusion capacity is normal.  No significant response to bronchiodilators, however this does not preclude clinical improvement."  (T. 465, 474.)

functioning, Ms. Yourick opined that he was "moderately limited" in walking, standing, lifting, carrying, pushing, pulling, bending, and climbing stairs or other climbing, and had "no evidence of limitation" in sitting, seeing, hearing, speaking, or using his hands. (T. 553.) Regarding Plaintiff's mental functioning, Ms. Yourick opined that Plaintiff was "moderately limited" in understanding, remembering, and carrying out instructions, maintaining attention and concentration, interacting appropriately with others, and functioning in a work setting at a consistent pace, and had "no evidence of limitation" in making simple decisions, maintaining socially appropriate behavior without exhibiting behavior extremes, and maintaining basic standards of personal hygiene and grooming. (*Id.*)

The ALJ afforded limited weight to Ms. Yourick's opinion. (T. 23.) The ALJ stated that he considered Ms. Yourick's opinion based on her treatment of Plaintiff, but noted that the sum of the evidence demonstrates that Plaintiff has greater functional abilities than opined by Ms. Yourick. (*Id.*) Additionally, the ALJ noted that Ms. Yourick assessed Plaintiff's physical and mental limitations, however she is not a specialist with regard to with either aspect of Plaintiff's treatment. (*Id.*)

First, a physician assistant is not an acceptable medical source under the regulations. 20 C.F.R. §§ 404.1513(a), 416.1913(a). An ALJ may consider a physician assistant's opinion as an "other source" opinion to show the severity of a plaintiff's impairments and how the impairments affect his or her ability to work. 20 C.F.R. §§ 404.1513(a), (c)-(d), 416.913(a), (c)-(d). However, an opinion from a physician assistant is not a medical opinion that is entitled to any particular weight under the regulations. 20 C.F.R. §§ 404.1513(a), 404.1527(b), 416.1913(a), 416.927(b).

Second, the ALJ properly applied the regulations in evaluating Ms. Yourick's opinion. As discussed above, the ALJ considered Ms. Yourick's professional credentials, treating relationship with Plaintiff, lack of specialty, and cited inconsistencies between the opinion and "the sum of the evidence." (T. 23.) Where an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review explicitly each and every factor of the regulation. *Atwater*, 512 F. App'x at 70.

For these reasons, the ALJ's assessment of the opinion of Ms. Yourick was supported by substantial evidence, and remand is not required on this basis.

**C.     Whether the ALJ was Required to Recontact Dr. Nelson and Dr. Del Pino**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 14-15 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The ALJ has an affirmative duty to develop a claimant's complete medical history. 20 C.F.R. §§ 404.1512(d), 416.912(d); *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009). By statute, an ALJ is required to develop a claimant's complete medical history for at least twelve months before an application for benefits was filed, and for a longer period when there is reason to believe that additional information is necessary to reach a decision. *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998). This duty exists even when a claimant is represented by counsel, due to the non-adversarial nature of a benefits proceeding. *DeChirico, 134 F.3d at 1184; Lamay*, 562 F.3d at 509.

Recontacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record. 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1). Additional evidence or clarification is sought when there is a conflict or ambiguity that must be

resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1520b(c)(1)-(4), 416.920b(c)(1)-(4); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998). However, reviewing courts hold that an ALJ is not required to seek additional information absent "obvious gaps" in the administrative record that preclude an informed decision. *Rosa*, 168 F.3d at 79 n.5; *see also Hart v. Comm'r,* 07-CV-1270 2010 WL 2817479, at *5 (N.D.N.Y. July 16, 2010).

Here, the record contains Plaintiff's complete medical treatment records for the relevant time period. Moreover, as discussed above in Part III.C.ii. of this Decision and Order, the record contains a comprehensive physical examination and opinion of Plaintiff's physical limitations from consultative examiner, Dr. Hsu. (T. 492-95.) The record also contains a comprehensive psychiatric evaluation and opinion of Plaintiff's mental limitations from consultative examiner, Christina Caldwell, Psy. D. (T. 684-88.) An ALJ is entitled to rely on the opinions of State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *see also Little*, 2015 WL 1399586, at *9. Accordingly, there were no obvious gaps in the administrative record that precluded the ALJ from making an informed decision.

For these reasons, the ALJ was not required to recontact Dr. Nelson and Dr. Del Pino, and remand is not necessary on this basis.

**D.** **Whether the ALJ's Credibility Analysis was Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 17-20 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271 (citing SSR 96-7p, 1996 WL 374186, at *2 [July 2, 1996].)

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any

> medication taken to relieve symptoms; (5) other treatment received
> to relieve symptoms; (6) any measures taken by the claimant to
> relieve symptoms; and (7) any other factors concerning claimant's
> functional limitations and restrictions due to symptoms.

*Rockwood*, 614 F. Supp. 2d at 271 (citing §§ 404.1529[c][3], 416.929[c][3]).  Further, "[i]t is the

role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to

appraise the credibility of witnesses,' including with respect to the severity of a claimant's

symptoms."  *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of*

*Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that statements concerning

the intensity, persistence and limiting effects of these symptoms are only partially credible

because they are not fully supported by medical and other evidence of record, competent medical

opinion, and testimony.  (T. 21.)  Throughout his opinion, the ALJ articulated the inconsistencies

that he considered in assessing the allegations of Plaintiff's symptoms, and in determining that

Plaintiff is not as limited as alleged, including (1) opinion evidence and examination findings

from acceptable medical sources, (2) Plaintiff's medical treatment history and compliance with

medical advice, (3) Plaintiff's reported activities, and (4) Plaintiff's sparse work history.  (T. 17-

23.)

First, the ALJ considered medical evidence of record that was inconsistent with the level

of severity alleged by Plaintiff, including the opinions of Dr. Hsu and Dr. Del Pino discussed

above in Part III.B.ii. and Part III.B.iii. of this Decision and Order.  (T. 17-23.)  For example, the

ALJ noted that Dr. Hsu opined that Plaintiff had no limitations in sitting, and standing, and had

mild limitations in prolonged strenuous activity such as climbing, or pushing or pulling heavy

loads. (T. 22.) Additionally, the ALJ noted that treating pulmonologist, Dr. Del Pino, opined that Plaintiff could not perform strenuous activities or heavy lifting, but did not have environmental work limitations. (*Id.*)

Second, the ALJ considered Plaintiff's treatment history and compliance with medical advice. (T. 21.) The ALJ noted that Plaintiff's only treatment between 2010 and 2012 was occasional monitoring of the residuals of pneumothorax, and Plaintiff did not begin to attend pain management treatments until 2012. (T. 22.) A plaintiff may be deemed less credible "if the level or frequency of treatment is inconsistent with the level of complaints." SSR 96-7p, 1996 WL 174186, at *8 (July 2, 1996); *accord, Sickles v. Colvin,* 12-CV-0774, 2014 WL 795978, at *22 (N.D.N.Y. Feb. 27, 2014) (finding that the ALJ properly cited Plaintiff's conservative treatment as a reason for discounting Plaintiff's credibility).

Additionally, the ALJ noted that "despite his respiratory complaints, the claimant has continued to smoke cigarettes against medical advice. This fact suggests that his respiratory problems are not as severe as he alleges." (T. 21.) A plaintiff's "statements may be less credible if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996); *Campbell v. Astrue,* 465 F.App'x 4, 6 (2d Cir. 2012).

Third, the ALJ considered Plaintiff's activities of daily living that were inconsistent with his complaints of disabling symptoms. (*Id.*) For example, the ALJ noted that Plaintiff testified that he cares for his children and had recently played basketball, baseball, and Frisbee with them, albeit in short intervals. (*Id.*) The ALJ noted that Plaintiff testified that he climbs stairs four to six times per day and testified that he exercises for about three hours throughout the day. (*Id.*) In May and June of 2011, Plaintiff reported to Dr. Follette that, despite numbness in his left hand

when he raises his arm, his arm and neck pain was "okay" and he continued to "soldier through" his difficulties. (T. 21-22.) Finally, the ALJ found that Plaintiff's "sparse work history also detracts from his credibility regarding motivation to work." (T. 21.)

In sum, the Court finds that the ALJ complied with the regulations and articulated the inconsistencies upon which he relied in discrediting Plaintiff's allegations of disabling impairments. (T. 17-23.) When the evidence of record "permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

For these reasons, the ALJ's credibility analysis was supported by substantial evidence, and remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: June 23, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge